Please be seated. Could the clerk call the next case please? Mr. Fischella, let me say while he's coming to the podium that Justice Liston is the third member of this panel. He's ill today. He will be listening to the tapes and participating in the conferencing of the case. But he just isn't here today. Mr. Fischella, good afternoon. Good afternoon, Justice. Good afternoon. May I proceed? Yes. May I please report? For the record, good afternoon. My name is Tim Fischella. I represent the appellant in this matter, Michael Sucic. There are essentially two issues before the court on appeal. Initially is the issue of whether the initial stop of Mr. Sucic's vehicle was supported by reasonable suspicion that a traffic violation had indeed been committed. The second issue is whether there was probable cause based on the uncharacterized slight odor of cannabis from the passenger compartment to justify the search of the trunk of the vehicle following an initial search of the passenger compartment, which revealed no cannabis or drug paraphernalia of any kind. Starting with the search of the trunk, the evidence of the trial court established that the officer pulled over Mr. Sucic for a minor traffic violation. He detected a slight odor of cannabis and smelled perfume on the passenger, which he believed might have been an effort to cover up the odor. He subsequently, as I stated, conducted a search of the passenger compartment, which revealed no cannabis, no drug paraphernalia, no smoking pipes of any kind. He then opened the search of the trunk and found weapons, which were the subject of the charges that were brought against Mr. Sucic. The Supreme Court has recognized that the scope of a search conducted pursuant to the automobile exception is limited to those areas of the vehicle and containers where probable cause exists to search. As a result, the scope of a search may only be as thorough as a magistrate could authorize by warrant. I mention those points of law first because I think they're the most critical to a pounce position, which is that if the deputy were to stop where he was at prior to his search of the trunk, go to a magistrate, and present these facts to a magistrate, that a magistrate, a neutral and detached magistrate, would not have probable cause or believe there was probable cause to believe that there was cannabis in the vehicle of the trunk. Those were the facts available to the officer. Additionally, the potential indicators of marijuana in this case were tied to the passenger and not Mr. Sucic himself. The perfume that was allegedly being used to cover up the odor of marijuana was tied to the passenger. There was no indication that Mr. Sucic, the driver of the vehicle, had glassy bloodshot eyes, slurred mumbled speech, or any other clues of impairment indicating that he perhaps as a driver had consumed cannabis. In other words, our position respectfully is that there was no probable cause or nexus to believe that cannabis would be discovered in the trunk. The car belonged to the passenger, didn't it? Correct. And it was the passenger with the cannabis? Ultimately, there was a small amount of cannabis discovered on the passenger back at the police station. I believe it was in her bra, but a relatively small amount, unless it was discovered on her. In our briefs, we've cited several cases. We respectfully suggest that the cases we've cited, and particularly United States v. Bradford, which is a Tenth Circuit case, Ohio v. Ferris, or State v. Ferris, which is an Ohio Supreme Court case, and U.S. v. Nielsen, which is also a Tenth Circuit case, are more consistent and in line with the decisions rendered by the Supreme Court in Acevedo v. Ross. And when we say that, what I mean by that is that basically what those courts recognized is that while there may be probable cause to search an individual area of the car based on an odor of cannabis, that that odor of cannabis does not necessarily spread to the entire car. The probable cause must still be particularized. I understand this court has decided a case recently which has somewhat similar facts and was cited to by the people in a supplement. In that case, it's people v. Weaver. I don't think, certainly it's not a pounce position that Weaver is inconsistent with Ross or Acevedo. We do think the facts are somewhat distinguishable in that case. In Weaver, the court did discuss, there was testimony from the trooper that there was an odor of raw cannabis. Now, I understand that the court in that case said that there is not necessarily a distinction or a different outcome that's going to come from raw versus burnt cannabis. I would respectfully suggest that in the totality of the circumstances, the type of cannabis certainly would be relevant in the scope of the search that's going to be conducted. By that, I mean it should go both ways. In other words, if an officer stops a vehicle and he smells an overwhelming odor of raw cannabis, then certainly that's more indicative of drug trafficking. In that circumstance, the officer would certainly be justified in a greater search of various parts of the vehicle, perhaps even taking the vehicle parts apart to try and discover where the cannabis is secreted. But also, in terms of a totality of circumstances argument, the reverse should also apply. In other words, when we have the case here, which is there is only a slight odor of burnt cannabis, then the likelihood that there's some large amount of drugs being trafficked, or even drugs being trafficked in any circumstance in the trunk of the vehicle is certainly less. I'm sorry. Is trafficking the only offense that's available here? Isn't just possession of cannabis an offense? Certainly, Your Honor. And that was one of the issues raised by the state is that, well, wouldn't then the trunk become a haven to potentially carry drugs maybe just for personal use? Well, certainly if the officer has probable cause to believe that there is cannabis in the trunk, then he would have probable cause and have the authority to search under the automobile exception. And we certainly don't ask the court to decide any issues that are outside of the facts of this case. We're just asking the court to look at what are the facts here. And the facts here are that there was only an odor of burnt cannabis. There was no indication that drugs were being transported in the vehicle. There was nothing pointing to the trunk of the vehicle in terms of what the facts available to the officer were. There are other cases that have been cited by the state, and again, I would respectfully suggest that those are all distinguishable. Initially, I would start with Stout, which is an Illinois Supreme Court case. Again, in that case, the court noted that the officer smelled burning cannabis. And burning cannabis is also distinct from burnt cannabis. And I think in that case, with the burning cannabis, the officer had a reasonable belief that there was marijuana smoked by one of the passengers just prior to the stop. And in that case, then perhaps a search of the trunk would be reasonable. In this case, we had burnt cannabis. And in burnt cannabis, somebody could have smoked who knows how long ago and have it on their clothes and have that odor upon them. And still, there would be no particularized suspicion that there would be cannabis located in the trunk. Also in Stout, which is sort of the threshold case, which is cited by many of the subsequent cases, there's not actually even a search of the trunk. This was a smell of cannabis and then a subsequent search of the defendant himself. And again, that is consistent with the Illinois Supreme Court decisions, which have sort of derived the automobile exception from Schimmel and from the search incident to Midwest. I understand it's its own distinct entity, but it's sort of evolved from that line of thought. As far as time, I will move on to the second issue. The second issue we have raised is whether the initial stop of Mr. Susick's vehicle was supported by reasonable suspicion. There's sort of two sub-issues that relate to this issue. The first is some contrasting testimony that the officer who made the initial stop gave. First of all, the officer's vehicle was attached with the dash cam. The dash cam was functioning, working properly. For whatever reason, the dash cam was not faced forward, so we do not have an actual video of the traffic offense. In addition to that, there was the trooper's initial testimony on scene, as is captured on the video that was submitted to the court, was that basically the way the officer characterized the traffic violation was, Mr. Susick, as you go through that intersection, one lane becomes two, and you've got to use your turn signal depending on which lane you choose. Now, our position is that that is what the officer said initially. That is the more credible version. The officer somewhat tweaks his testimony later on to suggest that, well, the violation didn't occur until Mr. Susick actually picked a lane, and then he switched lanes without signaling. But that was not his initial testimony. So there are some, I don't want to call them necessarily factual disputes, but there's somewhat of an issue as to that initially. Taking what the officer initially said, it is our position that the officer made a mistake of law, in that once an individual in a lane, and it's unfortunately a case of first impression as far as I can tell in Illinois, but as a lane divides and comes from one and then splits into two, whether a turn signal is actually required. Our position is that it's not required. Is it a divided two lanes, or is it one lane becomes two lanes, but there's no division? By that I mean there's just a line that makes the two lanes? I think once it divides past Brookmont, there is a strike line. At some point it becomes two separate lines. Our position, though, is that the alleged violation here, according to the officer, was that as it splits, that Mr. Susick was required to use his signal, and our position is that he was not required to do so.  Correct, Your Honor. If anything, you're to fear to the right. And that's what Mr. Susick did in this matter. So our position based on that is that there was no underlying traffic violation. As Your Honor correctly states, there's nothing in the traffic motor vehicle code that specifically prohibits it, so our position initially is that if there's nothing that prohibits it, then there's really no law preventing it. But even if the court were to find that the improper lane usage or turn signal requirements would apply, that it wouldn't actually be required in that situation. And what we've done in our brief, as the court's had an opportunity to review, is we've basically taken the closest things that we can find in terms of an analogy, which is, we believe, as you veer onto the highway. In that case, one lane becomes multiple lanes, but numerous jurisdictions have found that turn signal is not actually required in that situation. You're not changing lanes. Correct. That's what the motor vehicle code addresses signaling for, change of lanes. And that's our position, and that's what the authorities say as well, Your Honor, that basically as long as you're continuing on a direct course of traffic, you do not need to signal. Your Honors, unless there's any further questions, I would reserve the floor. Are there any pictures of that intersection in the record? Judge, I'm not sure if there's... I believe the intersection is... I don't believe it's in the record, Your Honor. And as you said, the video camera was not faced in that direction. Correct. Is there any explanation for that? I think the officer might have said that at some point he had been transporting somebody back to the police station earlier,  Okay. Thank you. And your position is that because the stop, the initial stop, was not valid, that anything that happened after that stop is also not valid? Yes, Your Honor. Okay. Thank you. Thank you. Ms. DeMichel. Good afternoon. Good afternoon. May you please report? Counsel, Laura DeMichel on behalf of the people. And I'll respond to the issues as they were raised in the order and the brief. The trial judge properly denied defendant's motion to suppress and his motion to reconsider. Regarding the first issue, the trial judge's findings regarding the credibility and that a traffic violation occurred were not against the manifest weight of the evidence. Credibility is generally a question for the trial court, and in this case, the trial judge specifically found that the officer's testimony was consistent that the defendant was in an area with two defined lanes at the time of the violation. And the officer was consistent about defendant's failure to signal while changing lanes. And the motion to suppress hearing. What lanes did he change? He was in the left-northmost lane. He switched in over the white stripe line into the right-southernmost lane while going east on Skyler, east of Brookmont. Around Brookmont, east of Skyler. So, there's one lane west of the intersection. There's two lanes east of the intersection. The officer testified that a second lane is added east of the intersection. So, after he had crossed the intersection, he was in the left-northernmost lane, which was the continuation of the single lane from the west and switched into the southernmost lane. So, he also testified consistently on the motion to reconsider, again stating that he was in the left-northmost lane and crossed over the dividing line into the right-southmost lane while going east. And in the recording, two officers describe an illegal lane change. And Deputy Honeycutt specifically describes how defendant changed lanes and how he got in the other lane. So, for there to be another lane, there must have been a first lane. And his testimony was consistent about being in an area with two lanes. Otherwise, he would have had to switch in the middle of the intersection because there's really no point where it splits into two. One lane is added east of the intersection. It appears that on page 35 of the record, or 36 of the record, that some photos and diagrams were introduced. Those aren't in the record on appeal. But the judge had been able to see them, and it's the appellant's burden to assemble the record on appeal. So, in the absence of contrary evidence, the people believe that the officer's testimony should be found credible, at least how the road was set up. Because if it wasn't, that would be really easy to contradict. They just introduce a map and say, no, this lane splits rather than added. But the deputy's testimony was clear that there's two lanes. The violation occurred where there's two lanes. So the officer had reasonable suspicion to stop the vehicle as he changed lanes without using a turn signal. And the people believe that the trial judge's finding is not against the manifesto of the evidence, so the violation is clear. Regarding the third issue, the officer had probable cause to search the trunk of the vehicle. Defense counsel notes that he's making an argument based on the odor have been a burnt cannabis odor, but actually the record is silent on that point. And the briefs note the silence on that point. It's not because he couldn't distinguish. The judge specifically found that he was trained and experienced in detecting the odor of cannabis. But he wasn't asked whether the odor he spelled in particular was burnt or raw. But under the case law, it really doesn't matter. Under the Smith case and the Weaver case, the court doesn't distinguish between whether the odor is burnt versus raw or whether the odor is faint versus strong. The odor of cannabis alone is sufficient to provide probable cause to search the vehicle and understand. And in this case, there's actually more than just the odor of cannabis alone. There's also the fact that the passenger was evidently attempting to cover up the cannabis smell with a very, very strong odor of perfume. And also, the defendant had told the officer before the search that the passenger smokes cannabis and that it was her car. So the officer had probable cause to search the vehicle. Then under Ross and Lewis, it flushes out the scope of that search. Under those cases, the scope encompasses the trunk because once there's probable cause to search the vehicle, there's probable cause to search anywhere where the object of the search may be found. Where the object of the search would be paraphernalia used in smoking cannabis or additional cannabis, that could easily be stored in the trunk just as it could be in the passenger compartment. So is it easily or is it wherever it can be found? I mean, what's the scope after that? The scope is where the object of the search may be found. How about hubcaps? I believe you can search under the hood. Dismantling the vehicle is another question. I've had that case before, but those aren't the vaccines. Well, I know that you're making a general statement. I'm wondering how far that goes. I know it goes under the hood in certain cases. In other districts, they found you can open the hood. So dismantling the vehicle is probably the line one can't cross. Sorry, I'm confused by my previous case. That's not the facts here. I would say we don't need to answer that because the trunk has been answered in Lewis. So whether you can dismantle it or not, Lewis and Ross both clearly state that the trunk is at least on limits. The glove compartment, Ross describes the glove compartment being within the bounds of the search. But if cannabis could be found there? Well, cannabis is often found in trunks. It's often found because you can just toss it in the trunk just as easily as you could toss it in the backseat of the vehicle. Which is why you probably wouldn't want to put it in the trunk. Because it's easier? Yeah, I just wanted to know where the outer limits of this were. But your answer is we don't need to go there because we do have case law that says you can go into it. And Ross makes a statement actually that a probable cause to search the vehicle extends to, it says about not distinguishing between the glove compartment and the trunk and the passenger compartment. So I believe it's in Ross as well. I think page 280 in there. So in this case there's weavers on point because in that case that was a trunk case as well. The court found there was probable cause to search the trunk based on the faint odor of cannabis smelled in the passenger compartment. So that would suggest that the trunk would be a place cannabis could be stored under this court's recent precedent as well. The officer in this case had probable cause to search the trunk and reasonable suspicion to stop the vehicle. So the trial judge properly denied the motion to suppress and the motion to reconsider. And the people would ask that this court affirm the trial judge's, his rulings affirm the defendant's conviction and sentence. Could you share with us this highway, how this, do you think it's configured? Okay. Because apparently it was an exhibit that isn't in the record. The officer's testimony about the diagram is in the record. The diagram itself is not in the record. So the officer clearly describes how there's one lane going along eastbound and with the intersection of Brookmont and Schuyler and then east of the intersection. There's two lanes here. A second lane is added. So the left northmost lane is a continuation lane. A second lane is added. And then there's also, it's a divided highway. So these two lanes, there's now two because one's been added, are divided by a median. The camera is facing backwards at the beginning of the stop. There's a median for two lanes going the other way. Yes. We don't need to worry about those. Right. He's going east from a single lane through the intersection and there's two lanes. Yes. Okay. So where did he not signal? The violation, the deputy's testimony is clear that the violation occurred east of the intersection. That he crossed white divider lines and he went from the northmost lane into the southmost lane. He went from the north lane to the south lane? Yes, without using a signal. And the trial judge specifically found that the violation occurred in an area where there were two defined lanes as opposed to the idea that it split into two. So you're saying that there's one lane, the left lane was just the continuation of the one lane on the other side of the intersection. And the lane that was added was the right lane. Yes. And he was going in the left lane and then he crossed into the right lane. He was going in the left lane, he crossed through the intersection, ended up in the left lane because that's the lane that continues. After the second lane is added, while there's a portion with two lanes, he crossed into the right lane. Okay, so you're arguing, because you're going to concede that if you make a choice, it's probably not in the motor vehicle code. But he was actually in a lane and then moved to another lane, which is called a changing of lanes. He changed lanes, yes. He didn't merely follow the course of the road. And even the merging type of situation described in defendant's brief, even if there was a choice, that would be different than the merging cases type of situation. Because when you're merging, you have one choice. You've got to enter the right-most lane. But here, when choices are added, a signal would still have some value to the cars behind you or cars that make one turn right. It may have value, but it may not be required. We really don't need to decide because the trial judge's finding in this case, which is supported by the evidence, is that it was an area where there were two lanes. Well, it's in an area. Two defined lanes. It's whether or not the vehicle changed a lane. Yes, and he found the deputy credible, and the deputy described the change of lanes, and he described that it was the area. It wasn't just the splitting situation, which would have been the middle of the intersection, apparently, or how the road was set up. Thank you. Mr. Fischel. Mr. Fischel. Hey, Christine. Yes. Just addressing counsel's point, I don't think there's actually any dispute about the way the intersection itself is configured. It's one lane that becomes two lanes at the intersection. I'm not sure, though, how you would differentiate between the left lane being the continuation lane and the right lane being the continuation lane. Once you hit the intersection, it becomes two lanes. What I'm getting, the representation of the testimony by opposing counsel is, is that the defendant is in one lane after the intersection, and that there's testimony that the defendant moves from that one lane into another lane while going down one lane, which would lead one to say, well, that is changing lanes. And that was... I mean, that's the way I'm interpreting what was being presented to me here. Yes, Your Honor. That was later the testimony of the deputy, and he was certainly impeached on that point by his video. And what was on the video was a historic quote here. Back there by Casey's, you didn't use your signal. You changed lanes. You got in the right lane. When it splits into two, you've got to change lanes when you get in the other lane. Right when it splits into two, once you go over, once you go through the intersection, as it goes to two lanes there, you have to use a turn signal. Not a big deal. In other words, I think it's clear from what the officer said is that he made the mistake of law here, that he believed that a signal was required once you go through. Right when it splits into two, once you go over, once you go through the intersection, as it goes to two lanes, you have to use a turn signal. That is not a correct statement of the law, a pounce position, and that's what the trooper said right away. We also have the fact that the video camera was turned the opposite way. We've cited some case law, CLADIS and Aronson, which are sort of CLADIS-related cases, where the court was certainly within its discretion to at the very least hold a negative inference as to what the trooper was testifying to based on the failure to provide this direct evidence of what the alleged traffic violation was. There was also some inconsistent testimony when the court allowed us to reopen the hearing as to whether there was actually a vehicle between the trooper's car, the deputy's car, and Mr. Susick's vehicle right around the time of the alleged infraction. In terms of the search of the trunk... Well, that negative inference, okay, about the camera, that would be where you find the, in effect, the trooper not credible, am I correct? I mean, here it's represented that the trooper, or the police officer, was found to be credible by the truck driver. Is that a fair statement? Judge, and I can't recall if the court specifically reused credible. I don't think it did. What happened was Mr. Susick initially, there was a hearing. I came in on the case and then asked to reopen it on the issue of the initial stop. I asked the officer about the stop and impeachment, as I talked about. In the court, I believe his exact words were, well, I haven't heard enough here to erode the prior testimony of the trooper, or something to that effect. I know the court used there's not enough to erode it. So credibility may have been used, I just don't want to say one way or the other. But at least there's... crediting of the officer. If you haven't eroded it, the officer's statement stands. Correct, Your Honor. And that's one of the reasons we've argued that the stop was not supported by reasonable suspicion, is against the manifest weight of the evidence. I certainly understand the court is limited to go back and can't really make credibility findings at this stage. But taken as a whole, I think there's enough to find that there wasn't articulated a reasonable belief that a violation had occurred. You said something a minute ago about looking at the video. What video were you talking about? There was a video of the traffic stop. Initially, the video camera's facing backwards. I believe it was made part of... I know it was made part of the appellate court record later in the process, but it was made part of the record. If the court doesn't have access to that, I will certainly make sure. But my understanding is that it was... What happens is there's a video of the traffic stop. Once the stop is completed, then it captures all the discussions between Mr. Suchik and the deputies. But it doesn't capture the lanes? Correct, Your Honor. Unless the court has any further questions? No, thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change. The court is now in recess.